STATE OF VERMONT
ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Appeal of Union Bank | } | Docket No. 299-12-06 Vtec |
|  | } |  |

### Decision on Appellee's Partial Motion for Summary Judgment

This appeal arises out of a denial by the Town of St. Johnsbury Development Review Board ("DRB") of an application to construct a handicap access ramp on the exterior of the Union Bank building in the historic downtown district. Appellant Union Bank ("Bank") is represented by Robert A. Gensburg, Esq.; and the Town of St. Johnsbury ("Town") is represented by Edward R. Zuccaro, Esq. and Kristina I. Michelsen, Esq.

Now pending before the Court is the Town's motion for partial summary judgment, which the Bank opposes. The Town's motion is now ripe for this Court's consideration.

### Factual Background[1]

1. Union Bank, a Vermont banking institution, owns what is known locally as the former Citizens Bank building ("Building") at the corner of 364 Railroad Street and Eastern Avenue in the Town of St. Johnsbury.

2. The Building is located in both the Commercial Zoning and Design Control Districts. It is also listed as a "contributing building" in the National Register Historic District.

3. The Building was designed by the 19th Century architect Lambert Packard and was constructed in 1893. The Building is four stories high on Railroad Street and slopes down to five stories on Eastern Avenue. The entire first floor, fronting on Railroad Street, consists of the Bank's principal St. Johnsbury office, including a customer lobby, teller facilities, loan offices, safe deposit boxes, a vault, administrative offices, an ATM and a board room. The second and third floors are used as professional and business offices by tenants[2] and the fourth floor is vacant.

4. The primary entrance to the Bank is located on Railroad Street; the entrance consists of three granite risers with double doors that open and close in the middle and swing out onto the

---

[1] All facts are undisputed unless otherwise noted. For purposes of this motion only, we view the material facts in a light most favorable to the Bank, since it is the non-moving party. V.R.C.P. 56(c).

[2] The second and third floor tenants are not a party in this action.

top riser. The first riser, on street level, is three and one-half inches high, the second riser is seven inches and the third riser is seven and one-half inches high. Access to the Bank's ATM is through a similar but separate entrance on Railroad Street. There are two flights of stairs inside the ATM entrance that lead to the professional and business offices on the second and third floors. Thus, there is no wheelchair access to the Building off Railroad Street, and inside the Building, there is no wheelchair access to the second, third or fourth floors.

5. The basement floor of the Building, which fronts on Eastern Avenue, is accessible by wheelchair, but there is no interior wheelchair access from the basement to the rest of the Building. There is one handicapped parking space near this Eastern Avenue entrance.

6. Intending to increase the handicapped accessibility to the Building, the Bank applied to the St. Johnsbury DRB for site plan approval to construct a ramp on Railroad Street to the primary entrance of the Bank on the first floor. The Bank also plans to install an elevator inside the Bank lobby on the first floor so that the second, third and fourth floors will be accessible to handicapped persons.[3]

7. The proposed ramp on Railroad Street is to be twenty-eight feet long and four feet, five inches wide. The Bank owns the portion of the sidewalk on which the ramp will be constructed. In 1984, the Bank conveyed an easement over the sidewalk to the Town for pedestrian and utility purposes, subject to the right of the Bank to construct its own improvements along the sidewalk, once it received approval from the Town. The Town Selectboard approved the construction of the proposed ramp within the easement-encumbered sidewalk, subject to approval by the Town's Highway and Water Departments. The Water Department has given that approval; the Highway Department has not responded to the Bank's request.

8. The State Division of Historic Preservation reviewed the ramp proposal and approved it, subject to conditions that the Bank has pledged to incorporate into its final design.

9. The Town DRB denied the Bank's application for site plan approval on November 19, 2006, and refused to grant a motion for reconsideration. The Bank thereafter appealed to this Court.

---

[3] The plan to install an elevator is not a component of the pending application.

**Discussion**

In their most recent filings, both the Town and the Bank appear to have conflated the issue of the Court's jurisdiction with the requirements of the Americans with Disabilities Act ("ADA").[4] We view the pre-trial issue now before us as whether the Environmental Court has jurisdiction to consider the requirements of the ADA[5] in the course of determining whether a permit application is in compliance with a local zoning ordinance. The Town has also raised the secondary issue of whether the Bank has standing to raise the requirements of the ADA in a municipal zoning application proceeding. These issues implicate Question #1 from Appellant's Statement of Questions, but are not directed to the merits of the Bank's application for a zoning permit.

Summary judgment is appropriate "when there are no genuine issues of material fact and, viewing the evidence in a light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." In re Carter, 2004 VT 21, ¶ 6 (citation omitted); V.R.C.P. 56(c). We review the Town's pending motion in this light.

**Environmental Court's Jurisdiction under the ADA**

When reviewing a municipal site plan application de novo, this Court's jurisdiction is as broad as the jurisdiction of the appropriate municipal panel. In re John A. Russell Corp., 2003 VT 93, ¶ 29, citing In re Torres, 154 Vt. 233, 235-6 (1990). Therefore, we may take whatever action on the appealed application as the municipal panel could have taken on the application before it. Torres, 154 Vt. at 235. Thus, to the extent that a municipal panel below can consider

---

[4] Appellant's Amended Statement of Question #1 asks "Did the St. Johnsbury Development Review Board fail to make a reasonable accommodation in its zoning rules as required by the ADA to allow the Bank to make its building accessible to handicapped people?" This question, in its current form, is not within this Court's jurisdiction. In a de novo appeal, such as we are required to conduct in this case, whether the municipal panel below erred is immaterial to our review. Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989), citing In re Poole, 136 Vt. 242, 245 (1978). We apply the substantive laws applicable to the tribunal below, de novo, and then make an independent evaluation on the issues preserved in the appeal, without regard to the appealed-from decision.

Statement of questions drafters often make this error. We will consider the Bank's Question #1 here as requesting, to the extent necessary, due to non-conformance of its proposed ramp to the applicable zoning ordinance provisions, that this Court make "reasonable accommodations" in its application of the By-Laws, so that the Bank may accomplish its goal of coming more into compliance with the ADA.

Similarly, the Town's partial motion for summary judgment frames the issue as "whether the Environmental Court has jurisdiction to rule on whether the ADA requires the Town to grant Union Bank's application for a permit to build a wheelchair ramp at the front of its historic building . . .." MSJ page 1. This issue, as framed by the Town, does not properly address the matter before the Court, as discussed more fully below.

[5] 42 U.S.C. § 12101 et seq.

the implications of the ADA upon the applicable zoning regulations, we can similarly consider the ADA implications when the zoning application is appealed to this Court.

The Bank has applied for site plan approval to construct an access ramp for use by handicapped individuals, so as to improve the Bank's conformance with the ADA.[6] Although the ADA is frequently cited by both parties, it is not an appropriate first step in our analysis. The fact that construction of the ramp may have been motivated by the ADA in no way negates the Bank's duty, as applicant, to show conformance with the zoning ordinance.

Discussion of the ADA is only appropriate where an applicant asserts that this Court must read the ADA as superseding a compliance requirement in the zoning regulations. Applicant here has not yet made such an assertion. Only if we find no possibility of the proposed ramp here, or a reasonable alternative, being in compliance with the St. Johnsbury Zoning By-Laws ("By-Laws") do we then address a suggestion that the ADA supersedes a specific provision of those By-Laws.

In arriving at this conclusion, we are guided by the general notion that applicable municipal, state and federal laws should be read, where possible, as in concert and not in conflict. "In possible preemption areas where common federal and state interests exist, courts should seek, if possible, some reasonable and uniform accommodation which does not frustrate either full congressional purposes and objectives or state policies in determining the relationship between federal and state laws. [I]f that is not possible, and state law interferes and conflicts with federal law, then federal law must prevail." Abdu-Brisson v. Delta Airlines, Inc., 128 F.3d 77, 86 (2d Cir. 1997). Thus, in our analysis of the pending application, we first seek site plan conformance with the local By-Laws prior to delving into any analysis of whether the Supremacy Clause of the United States Constitution (Article VI, Clause 2) requires a determination of whether the ADA intrudes upon the local zoning regulations.

On this point, we emphasize that we do not regard the Bank's Question #1 as asserting a "claim" under the ADA. Were the Bank asserting an ADA claim here, be it for monetary damages or injunctive relief, we would readily agree with the Town that such claims were beyond the scope of this Court's jurisdiction. We would then be compelled to grant the Town's pending request for partial summary judgment.

---

[6] We do not view Union Bank's appeal as a disability discrimination claim against the Town, pursuant to 42 U.S.C. § 12101. This will be discussed in further detail below.

4

The Town correctly notes that the Vermont Supreme Court has yet to address the appropriate intersection of the ADA and municipal zoning regulations. Ironically, the family court case referenced by the Town as offering an analogous precedent — In re B.S., 166 Vt. 345 (1997) — itself makes reference to a zoning appeal, albeit from the State of Pennsylvania: Aquaro v. Zoning Bd. of Adjustment, 673 A.2d 1055 (Pa. Commw. Ct. 1996). The Town summarizes the holding of Aquaro and the analogous precedent of B.S. by stating "that the ADA did not compel a zoning board to permit construction of a ramp simply because a property owner sought to comply with the ADA." Town Memorandum in Support of its Motion for Summary Judgment at 3, citing to Aquaro, 672 A.2d at 1061.

The case law concerning the appropriateness of considering the ADA when addressing municipal land use applications has evolved since 1996. While this specific question has still not been presented to the Vermont Supreme Court, multiple decisions from our Federal Circuit have spoken to the issue. While no precedent revealed itself to specifically overrule the Aquaro holding, as stated by the Town here (i.e.: the ADA cannot be read to mandate zoning approval of any proposed handicap ramp), several Second Circuit cases provide us with more direct guidance. Specifically, in the appeal of Tsombanidis, et. al. v. West Haven Fire Department, et. al., 352 F.3d 565 (2003), the Federal Second Court of Appeals noted that "[b]oth statutes [i.e.: the ADA and the FHAA (Fair Housing Amendments Act)] apply to municipal zoning decisions." Id. at 574, citing Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 45-46 (2d Cir.), cert denied, 537 U.S. 813 (2002); Forest City Daly Hous., Inc. v. Town of North Hempstead, 175 F.3d 144, 151 (2d Cir. 1999); and Innovative Health Systems, Inc. v. City of White Plains, 117 F.3d 37, 44 (2d Cir. 1997). This precedent stands for the general proposition that a municipal board has a duty under the ADA to make a "reasonable accommodation" in the application of its zoning regulations "when such accommodation may be necessary to afford [a handicapped person] equal opportunity to use and enjoy a dwelling." Tsombanidis, 352 F.3d at 578.[7]

The ADA states: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.

---

[7] The "reasonable accommodations" provisions of the ADA cited by the Tsombanidis court can be found at 42 U.S.C. § 3604(f)(3)(B).

5

§ 12132. The Second Circuit in Innovative Health Systems v. City of White Plains, 117 F.3d at 44, concluded that zoning decisions are "services, programs or activities" covered by the ADA's anti-discrimination provisions. "[T]he ADA . . . clearly encompass[es] zoning decisions by the City because making such decisions is a normal function of a governmental entity." Id. (referencing the federal district court's determination in Innovative Health Systems v. City of White Plains, 931 F.Supp. 222, 232 (S.D.N.Y. 1996), quoting the definition for "activity" found in Webster's Third International Dictionary (1993)).

Consistent with the Department of Justice regulations implementing the ADA, specific provisions are set forth to require "public entities to make reasonable modifications to their policies, practices, and procedures, where such modifications are necessary to avoid discrimination on the basis of disability." Innovative Health Systems, 117 F.3d at 45 (quoting 28 C.F.R. § 35.130(b)(7)). Further, "[z]oning enforcement actions, including the enactment of ordinances, and any administrative processes, hearings and decisions by zoning boards, fall squarely within the category of 'policies, practices or procedures' mentioned in the [ADA] regulations." Innovative Health Systems, 931 F.Supp. at 232 (footnote omitted).

For all these reasons, we conclude that the activities of the DRB fall within the ambit of the ADA. Where the application of municipal zoning regulations is the direct source of discrimination against a disabled person, the appropriate municipal panel in the first instance, and this Court on appeal, should consider making "reasonable modifications" in its interpretation of that zoning regulation to accommodate the disabled person.

However, we emphasize that at trial, the Bank here must first exhaust all efforts to show that its proposed ramp, or a reasonable alternative, can comply with the By-Laws, before we consider some "reasonable modifications" in our application of those By-Laws. As an entity obligated to accommodate disabled persons under the ADA, the Bank "must incur reasonable costs and take modest, affirmative steps to accommodate the handicapped as long as the accommodations sought do not pose an undue hardship or a substantial burden." Tsombanidis, 352 F.3d at 578; Shapiro v. Cadman Towers, Inc. 51 F.3d 328, 334 (2d Cir.1995).

In the appeal at bar, the By-Laws do not explicitly prohibit ramps. Instead, they require that the five considerations from By-Laws § 401.2 be satisfied. We will not be making a determination at trial of whether the ramp conforms to the ADA, as that is not within our jurisdiction. But recognizing the Bank's attempt to comply with the ADA, we anticipate

receiving evidence and rendering a determination on whether there can be a handicap access to the Bank constructed in conformance with the zoning regulations.

It may be undisputed that the ADA requires construction of a ramp so that handicapped members of the general public may access the Bank Building. However, whether the size, location and design of the proposed access ramp, or a reasonable alternative, can comply with the By-Laws will be determined at trial. The Bank's obligation at trial will be to show conformance with the By-Laws first; the Bank may only bring up the ADA if it shows conformance with the ADA necessitates non-compliance with specific provisions of the By-Laws.

**Union Bank's Standing to Raise ADA**

The Town challenges the Bank's standing to make a reasonable accommodation claim under the ADA. Although the Town does not contest that the Bank can meet the constitutional standing requirements of injury-in-fact, causation, and redressability, Innovative Health, 117 F.3d at 46 (citations omitted), it asserts that prudential standing requirements bar the Bank from asserting a claim under the ADA. See Warth v. Seldin, 422 U.S. 490, 499 (1975) (generally, a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties).

We first respond to this contention by the Town by repeating that in these proceedings, the Bank is not, and cannot, assert a "claim" under the ADA. As noted above, such a claim is beyond the scope of this Court's subject matter jurisdiction.

We next note that the ADA Title II enforcement provision extends relief to "any person alleging discrimination on the basis of a disability." Innovative Health, 117 F.3d at 47; 42 U.S.C. § 12133 (1994). The use of such inclusive language "evinces a congressional intention to define standing to bring a private action under . . . Title II as broadly as is permitted by Article III of the Constitution." Id.; (citations omitted). The Court in Innovative extended prudential standing to the plaintiff, relying on the broad language from Title II. Id. at 48.

The Bank is a place of public accommodation and has an affirmative duty to make its Building accessible to handicapped members of the general public. If the Bank can not provide that access, it may become liable under the ADA. Therefore, we find that the Bank has standing to raise the requirements of the ADA in this proceeding, subject to the burden of first proving that its proposed ramp, or a reasonable alternative, cannot conform to the By-Laws without some

7

"reasonable modification" in our interpretation of the By-Laws to accommodate the disabled person who may visit the Bank.

## Conclusion

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Town's motion for partial summary judgment is **DENIED**.  The Environmental Court has the jurisdictional authority to consider the requirements of the ADA in the course of determining whether a permit application is in compliance with St. Johnsbury Zoning By-Laws, and the Bank has standing to raise the requirements of the ADA in this proceeding, subject to the burdens of proof noted in this Decision.


Done at Berlin, Vermont, this 5th day of December, 2007.


_____
Thomas S. Durkin, Environmental Judge